## No. A-CV-01-85

# Supreme Court of the Navajo Nation

In the Matter of the Estate of:
Annie Belone
Yilth Habah Dawes, *Appellant*,
vs.
Helen D. Yazzie, *Appellee.*
Decided July 10, 1987

# OPINION

*Before Tso, Chief Justice, Bluehouse and Walters, Associate Justices.*

*Daniel Deschinny, Sr., Esq., Window Rock, Arizona for the Appellant;
Loretta Morris, Esq., DNA-People's Legal Services, Inc., Crownpoint,
New Mexico for the Appellee.*

*Opinion delivered by Tso, Chief Justice.*

This is a probate case, on appeal from an order entered by the Window Rock District Court. The order is dated November 21, 1984, and it was amended twice; the first time on December 27, 1984, and the second time on January 11, 1985. The final distribution ordered is as follows:

To Yilth Habah Dawes—98 sheep units from Grazing Permit No. 6802 including three horses and 25 acres of farmland.
To Helen D. Yazzie—99 sheep units from Grazing Permit No. 6802 including three horses with Brand EEA and ten acres of farmland.

Mrs. Annie Belone, an enrolled member of the Navajo Tribe, and a resident of Ft. Defiance, Arizona died intestate on May 10, 1978, at the age of 90. In its order of November 21, 1984, the district court found that she had been a single woman without any immediate family except for the appellee, Helen D. Yazzie. On October 3, 1978, the Window Rock District Court appointed Chee Dawes, as administrator of the estate. The court dismissed the matter of the estate without prejudice on January 9, 1981, after a hearing on November 13, 1980, in which Chee Dawes failed to appear.

On October 11, 1983, Ms. Yazzie filed an action in the Crownpoint District Court to quiet title to the grazing permit and the two land use permits involved in this case, and that court granted her title to all the permits on January 26, 1984. On July 2, 1984, the Window Rock District Court reopened the probate case on motion by Ms. Dawes, and appointed Ms. Dawes administratrix of the Belone estate as successor to her husband, who had died on January 8, 1981. Also on July 2, 1984, the Crownpoint District Court vacated its judgment awarding the grazing and land use permits to Ms. Yazzie, so that the entire matter could be decided by the Window Rock District Court. Ms. Yazzie filed notice of her claim to the entire estate, referring to the deceased as her "adoptive mother," on August 1, 1984, and Ms. Dawes submitted her final report on the estate, allotting the grazing and land use permits to herself, on August 15, 1984.

The first order by the Window Rock District Court was signed on November 21, 1984. It awarded 97 sheep units from Grazing Permit No. 6802, the brand EEA, and the land use permit for 25 acres of land to Ms. Dawes. 75 sheep units from the same grazing permit and the land use permit for 10 acres were awarded to Ms. Yazzie. After Ms. Yazzie moved for reconsideration on December 19, 1984, based on the court's failure to allocate 25 sheep units of the grazing permit, the court amended its order on December 27, 1984. In this modification, the court changed Ms. Dawes's award to 98 sheep units, including three horses, and awarded Ms. Yazzie 99 sheep units, with three horses, and the brand EEA. The court's January 11, 1985 order explained that the court had entered the December 27 modification, because the November 21 order had not allocated 25 sheep units, and that Rule 23, *Navajo Rules of Civil Procedure,* allows the court to reopen a case at any time to correct error. The court's November 21, 1984 order identified Ms. Yazzie as a "claimant" to the estate. In that order, the court found that Ms. Yazzie sustained her claim, through her own testimony and that of people who know her, that she was raised by the decedent, thus establishing the parent-child and child-parent relationship according to Navajo tradition, and entitling her to a share of the estate. The order is unclear as to what the court meant by referring to Ms. Yazzie as a "claimant," and whether the court found that the decedent had lawfully adopted Ms. Yazzie under Navajo common law.

On appeal, Ms. Dawes raises the issues of: (1) whether Ms. Yazzie's August 1, 1984 claim to the estate was barred by the statute of limitations; (2) whether the court erred in considering the issue of traditional adoption, because the issue had not been properly pleaded in Ms. Yazzie's original claim; and (3) whether the court erred in its finding, based on the testimony of an expert witness, that Ms. Yazzie had been adopted by the decedent according to Navajo common law.

# I. Statute of Limitations

Statutes of limitation fix the time within which an action must be brought. They do not confer any right of action, but simply restrict the period in which the right, otherwise unlimited, can be asserted. Thus, statutes of limitations are not matters of substantive rights, but are available only as defenses.

Under current Navajo law, in force since February, 1980, there is no specific limitation for probate cases, but the limitation for civil action for which no limitation is otherwise prescribed is five years. 7 N.T.C. §602(d); *Tribal Council Resolution* CF-19-80. Prior to February, 1980, the limitation for civil actions was six years. *Tribal Council Resolutions* CJ-51-56 and CO-69-58. Rule 1(h), *Navajo Rules of Probate Procedure* (currently in effect), requires that probate actions must be brought within six years, but this particular rule is based on the pre-1980 limitation for civil actions.

Therefore, there is no doubt that the statute of limitations applies to probate actions, and that the previous limitation of six years would apply to this case. However, the statute of limitations cannot be invoked to bar consideration of this matter. Ms. Belone died on May 19, 1978, and the case was filed on October 3, 1978, as case no. WR-CV-586-78. The case was dismissed without prejudice in 1981, and reopened for good cause on July 2, 1984. The present action is thus a continuation of the 1978 action, which was brought by Ms. Dawes's predecessor as administrator of the estate, and that action was within the statute of limitations.

Any heir or other interested party may file an answer to the administrator's final report at any time prior to the date set for final hearing. Rule 7, *Navajo Rules of Probate Procedure.* Pursuant to Rule 7, NRPP, Ms. Yazzie had a right to present her claim to the estate prior to the date set for the final hearing. The administrator of an estate must submit a final report within 30 days after his appointment, after which a final hearing is to be scheduled. Rule 7, NRPP. Because Chee Dawes, the original administrator, had not submitted a final report when the case was dismissed without prejudice on January 9, 1981, no final hearing had been scheduled. The final hearing did not take place until after the case was reopened on July 2, 1984. Thus, Ms. Yazzie did not have an opportunity to state her claim to the estate until after July 2, 1984, and her right to litigate her claim was not cut off by the statute of limitations or by prior action by the court.

# II. Proper Pleading of the Adoption Issue

Parties present claims in probate cases by means of pleadings. Rule 2, *Navajo Rules of Probate Procedure.* These pleadings must closely conform

to the requirements of Rules 4, 5, and 6 of the Navajo Rules of Civil Procedure. It is essential that they contain a statement of the grounds on which a claim against the estate is made. Where a claim relies on Navajo custom, the custom must be alleged, and the pleading must state generally how that custom supports the claim. If local custom is alleged, and it is different from the custom generally followed throughout the Navajo Nation, the pleading must so state. This is necessary for two reasons: (1) to ensure due process by allowing the adverse party to properly prepare his case, undertake discovery, and determine whether to present his own expert witness on Navajo custom; and (2) to allow the court an opportunity to determine exactly how that custom affects the case.

In this case, Ms. Yazzie based her claim to the estate on the contention that she is the child of the decedent, whom she described as her adoptive mother. Her pleading did not state what Navajo custom supported her claim. Based upon the contents of her answer, one might have assumed that she would attach legal adoption papers to her answer to support her claim. Here, Navajo custom was not alleged until trial. We hold that where, as here, a party's pleading does not indicate a reliance on Navajo custom, that party may not later offer evidence and seek relief under Navajo custom.

## III. Traditional Adoption

Although Ms. Yazzie did not plead Navajo custom and tradition in her answer to the final report, we will still consider the issue of traditional adoption for purposes of guidance. Rule 6(9) of the Navajo Rules of Probate Procedure sets out the order of precedence for distributing the estate of a person who dies intestate. Children of decedent are second in order, brothers and sisters sixth, and nephews and nieces seventh. Ms. Yazzie is the decedent's niece, and claims to be her adopted daughter. Ms. Dawes's husband was the decedent's brother, and thus Ms. Dawes inherited her husband's interest in the estate upon her husband's death. The decedent left no other surviving children. Under Rule 6(9), NRPP, if Ms. Yazzie is the decedent's daughter, she is entitled to the entire estate. If she is not the decedent's daughter, then the estate will be divided among the decedent's surviving brothers and sisters, or their heirs.

Rule 6(10), NRPP, states, "If there is shown to be a Navajo custom concerning the distribution of the property, the property will descend according to that custom, even if the custom is in conflict with any other provision of this rule." This rule follows 8 N.T.C. §2(b),[1] as well as 7 N.T.C.

---

1. "In the determination of heirs the court shall apply the custom of the Tribe as to inheritance if such custom is proved. Otherwise the court shall apply state law in deciding what relatives of

§204(a),[2] which requires courts to apply any laws or customs of the Navajo Nation not prohibited by applicable federal laws. In this case, custom can be used to show either that the decedent had adopted Ms. Yazzie, or that custom supported Ms. Yazzie's claim to a portion of the estate.

Because established Navajo customs and traditions have the force of law, this Court agrees with the Window Rock District Court in announcing its preference for the term "Navajo common law" rather than "custom," as that term properly emphasizes the fact that Navajo custom and tradition *is* law, and more accurately reflects the similarity in the treatment of custom between Navajo and English common law:

> The *lex non scripta*, or unwritten law, includes not only general customs, or the common law properly so called; but also the *particular customs* of certain parts of the kingdom; and likewise those *particular laws,* that are by custom observed only in certain courts and jurisdictions.

Blackstone, 1 *Commentaries on the Law of England* 62 (emphasis in the original), cited in *In the Matter of the Estate of Boyd Apachee*, 4 Nav. R. 178, 179-81. (Window Rock D. Ct. 1983). Navajo custom and tradition may be shown in several ways: it may be shown through recorded opinions and decisions of the Navajo courts or through learned treatises on the Navajo way; it may be judicially noticed; or it may be established by testimony of expert witnesses who have substantial knowledge of Navajo common law in an area relevant to the issue before the court. *Id.; 7 N.T.C. §204 (b).

Where no question arises regarding custom or usage, the court need not avail itself of experts in Navajo culture. Rule 5, *Navajo Rules of Evidence. 7 N.T.C. §204(a) requires the court to take judicial notice of Navajo traditional law. Even if custom and tradition are arguably matters of factual evidence, and not simply reading the law as it is printed, it is clear that a court can take judicial notice of customs as adjudicative facts. Thus, if a custom is generally known within the community, or if it is capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned, it is proven. In the Navajo context, the comment by a Dean of one law school that "judicial notice may only be taken of those facts every damn fool knows" is appropriate. E. Cleary, *McCormick on Evidence*, §329, (3rd ed. 1984). However, if a district court takes judicial notice of a particular custom as Navajo common law, it must clearly set forth in its order the custom on

---

the decedent are entitled to be his heirs." However, in *Sells v. Sells,* 5 Nav. R. 104 (1986), this Court held that Navajo courts must follow Navajo case law wherever possible, and may apply state law only to decide legal issues of first impression.

2. In *Sells v. Sells, Id.,* we interpreted the Judicial Reform Act of 1985, 7 N.T.C. §204, to make the application of state law discretionary with the courts, assuming no Navajo case law is directly on point. Courts may "adopt and develop law that best meets the needs of the Navajo people." *Id.* at 108.

which it is relying, so that the basis for its decision is clear and can be reviewed by this Court. In this case, the district court did not identify the custom it used for its division of the estate, and therefore we conclude that it must not have taken judicial notice of custom for the purpose of applying Navajo common law.

All evidence must be authenticated to the satisfaction of the judge before it is admitted. Rule 30, *Navajo Rules of Evidence*. Thus, if a party, as in this case, intends to present the testimony of an expert witness to support his claim that a particular custom constitutes Navajo common law, he must satisfy the court that his use of an expert witness is proper. Non-Indian jurisprudence distinguishes between a lay witness and an expert witness. A lay witness can testify only to his first-hand knowledge of the facts. An expert witness can draw inferences from facts that a trier of fact would not be competent to draw. E. Cleary, *McCormick on Evidence* §13 at 33.

Before testimony of an expert witness is admitted, the court must determine that the witness is qualified because his skill, knowledge or experience in the pertinent field makes it likely that his opinion or inference will aid the trier of fact in the search for truth. The expert's knowledge may be derived from reading, from practice, or, as is more commonly the case, from both. Further, an expert's testimony is admissible only if the knowledge from which he draws his inferences is so specialized as to be beyond the understanding of laymen, although some jurisdictions will admit expert testimony concerning matters about which the jurors may have general knowledge, if the expert opinion would still aid their comprehension of the issue. A court may decide not to admit expert testimony if it believes that the state of the pertinent area of knowledge does not permit a reasonable opinion to be asserted even by an expert. It may also decline to admit such testimony if the court believes that an opinion based upon particular facts cannot be grounded on those facts. E. Cleary, *McCormick on Evidence*, §13 at 33, 34.

Apart from Rule 30, the Navajo Rules of Evidence lacks specific rules regarding expert witness qualifications. We stated in *George v. Navajo Nation, et al.,* 2 Nav. R. 1 (1979), that:

> The qualifying of expert witnesses is one area of trial procedure which is left to the sound discretion of the trial judge.
>
> There is no substitute for first-hand observation and examination of the qualification of such experts. The [Supreme Court] must exercise considerable restraint in this area and must resist the temptation to jump in and substitute its own opinion for the opinion of the trial judge or reverse his judgment on this basis.
>
> Given the justifiable reluctance on our part to outguess the District Court on matters of this nature, we must, however, exercise our power of review and determine whether there is some reasonable basis behind the judge's exclusion of. . .witnesses offered as experts. . . .

*Id.* at 6.

Within the bounds of that case, we now set forth the following general guidelines within which district court judges may exercise their discretion to admit or exclude expert testimony. The trial judge must satisfy himself that an expert witness on Navajo custom is in fact an expert in this area. A witness's qualifications on custom may come from reading or practice, or from other evidence of a witness's understanding of custom. In the latter category, a witness may be qualified based upon his familiarity with Navajo traditions acquired by oral education, or his adherence to a traditional way of life, or through his long-term interest in deepening his knowledge of Navajo custom, or through his status within the community as a person with a special knowledge of custom. After the court determines that a witness is qualified as an expert, the witness can draw inferences from facts that the trier of fact would not be competent to draw.

In cases where Navajo custom is disputed, and might determine the outcome, the court should hold an informal pre-trial conference with two or three expert witnesses as appointed by the court, as authorized in Rule 24(a), Navajo Rules of Evidence. The parties and their counsels may attend, but their participation should be limited to asking questions to clarify the expert witnesses' conclusions. The expert witnesses may discuss among themselves how Navajo custom should be applied in the case before the court, until they arrive at a consensus. This is the way Navajos have traditionally clarified their understanding of customs, and it is more appropriate than the adversarial system where each party tries to interpret custom to benefit its own interests.

Within these guidelines, the court can determine admissibility of expert testimony within its discretion. This Court cannot add its own specific standards by which a witness will be qualified as an expert in matters of Navajo custom beyond these guides. However, where, the outcome of a case on appeal depends on a question of Navajo common law, that was established in the proceedings below through an expert witness, this Court must review, as a matter of law, whether the district court followed the proper procedure in determining the expert witness's qualifications as regards the custom or tradition applicable to the specific circumstances and locale involved. Therefore, where expert testimony is admitted, the record must show clearly the basis of the expert witness's specialized knowledge, and why it is particularly relevant to the question before the court.

In this case, the court found that Ms. Yazzie sustained her claim "by her own testimony as well as by those who knew her." *In the Matter of the Estate of Annie Belone*, No. WR-CV-586-78, Order dated November 21, 1984 (Window Rock District Court). Ms. Yazzie states in her opposing brief that the court "heard the testimony of an expert witness and took judicial notice of matters testified to concerning Navajo custom adoption and inheritance." Brief for the Appellee at 4. Ms. Dawes's brief states that Ms. Yazzie introduced the testimony of an expert witness, but that the testimony did not

cover the specific circumstances of this case. Brief for the Appellant at 11, 12. Because the parties did not provide a transcript of the expert witness's testimony to this Court, and because the district court's orders did not mention the expert witness, there is nothing in the record to show that the district court (1) found that the expert witness was qualified, (2) found that the witness's testimony was directly relevant to the issues being litigated, or (3) examined the witness's qualifications to draw inferences from the specific facts of this case. Without such findings, the record contains no evidence which shows that Ms. Yazzie was the decedent's adopted daughter. Therefore, Ms. Yazzie cannot base her claim to the decedent's estate on a theory of traditional adoption.

In her Response to Final Accounting and Response and Objection to Administratrix's Motion to Dismiss Claim Against the Estate, filed with the district court, Ms. Yazzie also argues that, even apart from her child-parent relationship with the decedent, she is entitled to a portion of the estate through her father, Willie Dawes, who was the decedent's brother. However, Willie Dawes died before the decedent, as did the decedent's husband and son. Therefore, Ms. Yazzie's claim under this argument is without merit. The decedent was survived by one brother, Chee Dawes, who was Ms. Dawes's husband, and two sisters, Nettie Rose Dawes and Maggie Dawes. According to Rule 6(9), NRPP, these three take precedence in inheritance over Ms. Yazzie as the decedent's niece. Ms. Yazzie has established no grounds that would justify disregarding that rule.

Finally, Ms. Yazzie argues that the district court has equitable powers to distribute the decedent's grazing and land use permits in a fair and just manner. However, in the absence of clear indication that the decedent intended to leave all or part of her estate to Ms. Yazzie, the district court's equitable powers do not allow it to ignore the clear and unambiguous directions contained in Rule 6, NRPP.

The findings of the lower court do not support the award of property to Helen Yazzie. The court's conclusion that Ms. Yazzie was adopted according to Navajo common law is not supported by the record. We hold that the district court erred in its division and distribution of property in this case.

The heirs are clearly the one brother and two sisters. The portion of the estate awarded to Chee Dawes must be further probated to his surviving issue, and the portion awarded to Maggie Dawes must likewise be probated to her issue. The decision of the district court in this case is reversed and the matter is remanded to the Window Rock District court for distribution of the decedent's estate consistent with this Opinion.